FILED
NOV 4 2021
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

In the Matter of the Seizure of )
Approximately $16,251.00 U.S. Currency, )
currently in the custody of St. Louis County ) Case No.  4:21MJ7262 SPM
Police Department, )
)

## APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT

I, Robert Brannan, being duly sworn depose and say:

I am a Task Force Officer with the Federal Bureau of Investigation, and have reason to believe that there is now certain property namely

Approximately $16,251.00 U.S. Currency, currently in the custody of St. Louis County Police Department,

which is

subject to forfeiture under Title 21, United States Code, Sections 853 & 881(a), and therefore, is subject to seizure under Title 18, United States Code, Section 981(b) and Title 21, United States Code, Sections 853(e)&(f) and 881(b) concerning violations of Title 21, United States Code, Sections 841(a)(1) & 846.

The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

Continued on the attached sheet and made a part hereof.    X   Yes ___ No

_____ FBI TFO
Signature of Affiant, Task Force Officer Robert Brannan

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41

November 4, 2021,  10:01                    at  St. Louis, Missouri
Date and Time Issued                              City and State

Honorable Shirley P. Mensah, U.S. Magistrate Judge     _____
Name and Title of Judicial Officer                       Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEIZURE WARRANT

I, Detective Robert Brannan, DSN 4398 FBI/TFO, being duly sworn, depose and state as follows:

1. I am a Police Officer with the St. Louis County Police Department and have been for approximately six (6) years, and I have been a Police Officer in the State of Missouri for more than fifteen (15) years.  I am currently assigned to the St. Louis County Multi-Jurisdictional Drug Task Force and have been serving as a Task Force Officer (TFO) for the Federal Bureau of Investigation (FBI) for approximately five (5) years. Through my training and experience, I have become familiar with the debriefing of cooperating witnesses and other sources of information and with methods of searching locations where illegal drugs, firearms, instruments of money laundering, and evidence of other crimes may be found. I have been trained in and have experience conducting surveillance of drug traffickers and violent street gangs. I am familiar with the methods used to import illegal drugs and firearms. I have interviewed persons involved in violations of federal laws pertaining to firearms and drug trafficking.

2. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3. This affidavit is not intended to be a complete and detailed description of all of the facts and evidence discovered during this investigation.  Rather, this affidavit sets forth sufficient information to establish probable cause to authorize the seizure of the property described in this affidavit.  Information in this affidavit is based upon my own investigation and that of other experienced law enforcement investigators with whom I am working.  As part of the investigation

described in this affidavit, I have reviewed public records and talked with or reviewed reports of other law enforcement investigators.

**Property to Be Seized**

4. This affidavit is made in support of an application for a warrant to seize the following property:

   a. $16,251 US currency (Item #1);

   b. FNH semi-automatic pistol, bearing serial number 386334983 (Item #2);

   c. Micro-Draco AK-47 semi-automatic pistol, bearing serial number PDM13135-19 RO (Item #3);

   d. American Tactical AR-15 semi-automatic pistol, bearing serial number NS217457 (Item #4); and

   e. Twenty-one rounds of 5.7 caliber ammunition, sixty-one rounds of 7.62 x 39 caliber ammunition, and eleven rounds of .223 caliber ammunition (Item #5).

5. The above-described property is currently in the custody of the St. Louis County Police Department at 7900 Forsyth, St. Louis, Missouri. A seizure warrant is needed to transfer custody of the property from the St. Louis County Police Department to the Federal Bureau of Investigation. The Federal Bureau of Investigation is seeking to execute this seizure warrant in order to pursue forfeiture under federal forfeiture laws.

6. As set forth in this affidavit, there is probable cause to believe that Item #1, described above, constitutes proceeds of the sale of illegal drugs, and was used, or intended to be used, in any manner or part, to commit or facilitate the commission of a drug offense, in violation of 21 U.S.C. §§ 841 and 846. In addition, as set forth in this affidavit, there is probable cause to believe that Items #2 – 5, described above, were used, or intended to be used, in any manner or part, to commit or facilitate the commission of a drug offense in violation of 21 U.S.C. §§ 841 and

846, and were unlawfully possessed by a felon in violation of 18 U.S.C. § 922(g) and possessed in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c).

### Legal Framework

7. The Controlled Substances Act criminalizes the distribution, possession with intent to distribute, and conspiracy to distribute controlled substances.  21 U.S.C. § 841(a)(1) and 846.

8. Under 18 U.S.C. § 922(g), it is unlawful for any person who has been convicted of a felony to possess, in or affecting interstate commerce, any firearm or ammunition.   Under 18 U.S.C. § 924(c), it is unlawful for any person to possess a firearm in furtherance of a drug trafficking crime.

9. The proceeds of drug offenses are subject to forfeiture under both civil and criminal forfeiture authorities.  Pursuant to 21 U.S.C. § 881(a)(6), "all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance…all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [the Controlled Substances Act]" are subject to civil forfeiture.  In addition, pursuant to 21 U.S.C. § 853(a)(1), any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of a violation of the Controlled Substances Act are subject to criminal forfeiture.

10. A firearm that is "used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of" controlled substances is subject to civil forfeiture pursuant to 21 U.S.C. § 881(a)(11).  In addition, pursuant to 21 U.S.C. § 853(a)(2), "any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" a violation of the Controlled Substance Act is subject to criminal forfeiture.

11. Firearms and ammunition are subject to seizure and criminal forfeiture pursuant to 18 U.S.C. § 924(d) as being involved in or used in any knowing violation of 18 U.S.C. § 922(g) or 18 U.S.C. § 924(c).

12. Pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 881(b), property subject to civil forfeiture may be seized by a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed," and may be executed "in any district in which the property is found," if there is probable cause to believe the property is subject to forfeiture. A civil forfeiture action may be brought in any district where "acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A). 21 U.S.C. § 853(f) provides authority for the issuance of a seizure warrant for property subject to criminal forfeiture.

13. Based on the foregoing, the issuance of this seizure warrant is authorized under 21 U.S.C. § 853(f) for criminal forfeiture and under 18 U.S.C. § 981(b) for civil forfeiture. Notwithstanding the provisions of Rule 41(a) of the Federal Rules of Criminal Procedure, the issuance of this seizure warrant in this district is appropriate under 18 U.S.C. § 981(b)(3) and 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in the Eastern District of Missouri.

**Probable Cause**

14. In or around January 2020, law enforcement began an investigation of an individual known as "D," later identified as ANTWON NEWLON, for selling fentanyl in St. Louis County near Interstate 270 and West Florissant Avenue, within the Eastern District of Missouri. A known and reliable confidential informant informed members of the St. Louis County Police Bureau of Drug Enforcement that "D" was distributing heroin and fentanyl from a vehicle in north St. Louis

4

County. The confidential informant described "D" as a tall, black male with short hair who drove either a black Dodge Charger or a silver Infiniti sedan.

15. The confidential informant provided law enforcement officers with a known telephone number of "D." The telephone number was checked through law enforcement databases with negative results.

16. On or about January 16, 2020, a law enforcement officer acting in an undercover capacity called the phone number provided by the confidential informant to initiate a controlled buy of fentanyl from "D." After the undercover officer dialed the phone number, a male answered the phone. The undercover officer stated that he/she wanted "one hundred." Based on my training and experience, it is common for individuals to speak in abbreviate phases when referring to drug transactions. Based on my training and experience, I know asking for "one hundred" to mean the undercover officer was asking to purchase $100 in US currency worth of fentanyl. After making this request, the undercover officer asked if "he was good," which, based on my training and experience, I know to mean whether "D" was able to provide the undercover officer with the requested fentanyl. The male voice replied, "Yea. Call me when you get to 270/Hanley."

17. Prior to departing to the requested location, the undercover officer was outfitted with a body wire, which allowed the assisting law enforcement officers to audibly monitor the drug transaction. The undercover officer was also given $100 US currency to be used in the transaction.

18. The undercover officer departed for the requested meeting place while under constant surveillance by other assisting law enforcement officers. As the undercover officer neared Interstate 270 and Hanley Road, he/she called the same phone number, and a male voice again answered the telephone. The male voice told the undercover officer that he was near Hanley

5

Road and requested that the undercover officer to proceed to Brittany Town Place near Hanley Road.

19. After arriving at Brittany Town Place, the undercover officer again called the same phone number. A male voice again answered the telephone, and the undercover officer let the man know that he/she had arrived. The male voice instructed the undercover officer to park next to a black SUV. A short time later the officers conducting surveillance in the area observed a silver Infiniti sedan parked next to a black SUV. The Infiniti was occupied by one black male. This individual was later identified as NEWLON.

20. The officers conducting surveillance observed the driver of the silver Infiniti and occupants of the black SUV exchange items. The undercover officer then pulled his/her vehicle next to the Infiniti. After giving $100 US currency to the driver of the Infiniti, the driver of the Infiniti handed the undercover officer multiple clear/blue capsules of a white powdery substance believed to be fentanyl.

21. After completion of the transaction, the undercover officer reported back to a predetermined secure location. The undercover officer described the driver of the silver Infiniti as a black male with short hair. The undercover officer relinquished custody of the clear/blue capsules believed to be fentanyl. Because of the dangers involved in handling fentanyl, these capsules were not field tested.

22. Officers maintained surveillance of the silver Infiniti as it left the area. While under surveillance, the Infiniti was observed arriving at 7273 Morningaire Circle in Hazelwood, Missouri within the Eastern District of Missouri. The driver of the Infiniti was then observed entering the residence at that address.

23. Using law enforcement databases, an address check was performed on 7273 Morningaire Circle, and it was discovered that the utilities had been active since December 2019 in the name of ANTWON NEWLON. A photograph of NEWLON was obtained and shown to the undercover officer. The undercover officer positively identified NEWLON as the individual who sold him/her the suspected fentanyl.

24. On or about January 21, 2020, the undercover officer called the same phone number. A male voice answered, and the undercover officer again asked for "one hundred." Additionally, the officer asked if he was "good," to which the male voice replied, "Yea. Call when you get to 270/West Florissant."

25. Prior to departing to the requested location, the undercover officer was outfitted with a body wire, which allowed the assisting law enforcement officers to audibly monitor the drug transaction. The undercover officer was also given $100 US currency to be used in the transaction.

26. Meanwhile, other law enforcement officers were conducting surveillance of 7273 Morningaire Circle in Hazelwood, Missouri. Law enforcement officers observed the same silver Infiniti sedan and a black Dodge Challenger parked near the address. Officers also observed NEWLON exit the residence, enter the driver's seat of the Infiniti, and depart the area in the Infiniti.

27. The undercover officer departed for the requested meeting place while under constant surveillance by other assisting law enforcement officers. As the undercover officer neared Interstate 270 and West Florissant, he/she called the same phone number and a male voice again answered the telephone. After a series of phone calls, the undercover officer was directed

by the male voice to go to the Chili's restaurant parking lot located at 13901 Halls Ferry in Florissant, Missouri.

28. Upon arriving at the Chili's, the undercover officer called the same phone number. A male voice answered, and the undercover officer advised that he/she was pulling up. A short time later the silver Infiniti occupied by NEWLON was observed pulling into the parking lot. The undercover officer pulled up to NEWLON in the Infiniti and handed him $100 US currency. In turn, NEWLON supplied the undercover officer with multiple clear/blue capsules of a white powdery substance believed to be fentanyl.

29. After completion of the transaction, the undercover officer reported back to a predetermined secure location. The undercover officer identified the driver of the silver Infiniti as NEWLON, based on the photograph previously shown to the undercover officer. The undercover officer relinquished custody of the clear/blue capsules believed to be fentanyl. The suspected fentanyl was not field tested because of the dangers involved in handling it.

30. A search of law enforcement databases revealed that NEWLON was a convicted felon.

31. On or about February 25, 2020, members of the Violent Gang Safe Street Task Force went to effect the arrest of NEWLON for delivery of a controlled substance and based on an active warrant from Hazelwood Police Department relating to resisting arrest and failure to appear. The participating law enforcement officers all were wearing their department-issued vests with the word "POLICE" prominently displayed on the front and back of the vests and exposed badges, which further identified them as police officers.

32. On or about the morning of February 25, 2020, law enforcement officers conducted surveillance at 7273 Morningaire Circle. After a brief time, officers conducting surveillance

observed NEWLON exit the front door of 7273 Morningaire Circle and, after stepping outside for a brief period, he re-entered the residence. A short time later NEWLON exited the residence again and began to approach a white Infiniti sedan.[1]

33.     Law enforcement officers then approached NEWLON, identified themselves, and told NEWLON that he was under arrest. NEWLON ignored the officers' commands and began to back up towards the front door of 7273 Morningaire Circle. Prior to NEWLON arriving back at the residence, law enforcement officers apprehended NEWLON and placed him under arrest. Incident to arrest, NEWLON was searched for officer safety purposes. During this search, a plastic bag containing multiple clear/black capsules with a white powdery substance believed to be fentanyl, two LG smart phones, and $85 US currency (Item #1) were found on NEWLON's person.

34.     As law enforcement officers were taking NEWLON into custody, officers could hear unknown individuals inside 7273 Morningaire. Believing the residence to be a narcotics trap house and the unknown individuals to be involved in the distribution of illegal narcotics and possibly to be in possession of firearms, officers approached the front door of 7273 Morningaire to attempt to contact the individuals inside.

35.     An officer observed two individuals inside the residence through the partially open front door. The officer identified himself and asked the individuals to come to the front door. The two individuals ignored the officer's request and began to run through the residence toward the rear of the apartment.

36.     Believing the individuals may be trying to retrieve a weapon, officers entered the front door of the residence and gave chase. The officers continued to shout, "Stop. Police. Get on the ground." The individuals ignored the commands and continued to run. After a short chase,

---

[1] The white Infiniti was parked in the same parking spot near 7273 Morningaire Circle in which officers had previously observed the silver Infiniti driven by NEWLON parked.

officers caught the individuals and placed them into custody without incident. A physical search was conducted of these two individuals for officer safety purposes, which produced negative results for weapons or contraband.

37. Believing there could be additional occupants inside the residence, officers conducted a protective sweep of the residence for officer safety purposes. During the protective sweep, another individual was located in an upstairs bedroom.

38. During the protective sweep, officers observed in plain view a FNH semi-automatic pistol, bearing serial number 386334983 (Item #2); a micro-Draco AK-47 semi-automatic pistol, bearing serial number PDM13135-19 RO (Item #3); numerous plastic bags containing suspected illegal narcotics; and drug paraphernalia.

39. Once the residence was secure, officers approached NEWLON and explained why they were there. He was also advised of his Miranda rights, to which NEWLON replied that he understood his rights. After being advised of his rights, NEWLON agreed to answer the law enforcement officer's questions.

40. NEWLON stated he lives at 7273 Morningaire Circle with his girlfriend in the front bedroom. When asked about the white powdery capsules that were found on his person and in the residence, NEWLON did not respond. Officers then explained the dangers of fentanyl when touched during evidence collection. NEWLON responded, "That ain't feny. Well, I don't know. I just get it like that." When asked if those items were heroin, NEWLON shrugged his shoulders.

41. Officers then asked NEWLON if there was anything else in the apartment, to which NEWLON replied, "No. There's nothin' in there." The officer then asked if NEWLON would consent to a search of the residence, to which he replied yes but only if he could write a statement

saying the weapons were not his. The officer then reminded NEWLON that they had not mentioned any weapons, to which NEWLON replied, "Nevermind."

42. Officers then asked about the FNH pistol (Item #2) and the micro-Draco pistol (Item #3) that were observed in plain sight inside the residence. NEWLON stated, "Man. Them guns are legal. They ain't mine." NEWLON went on to say, "Because my girl bought from the gun show. She's allowed to buy guns." The officers mentioned that NEWLON was a convicted felon and was not allowed to be in possession of a firearm. NEWLON then stated, "Nah. My PO said they could be in my house as long as they ain't mine and they ain't. My girl bought them." NEWLON was then told he was not allowed to be around any firearms, and he was then asked if there were any other firearms or illegal narcotics in the residence. NEWLON looked away and towards the ground and did not answer the question.

43. A state search warrant was obtained for 7273 Morningaire Circle, Hazelwood, Missouri from Judge Schroeder in Division 32 of the Circuit Court of St. Louis County, Missouri.

44. During the search, officers found additional suspected illegal narcotics, various rounds of ammunition (Item #5), ten cell phones, an American Tactical AR-15 semi-automatic pistol, bearing serial number NS217457 (Item #4), and $16,172 US currency (Item #1).[2]

45. On or about February 3, 2021, NEWLON was charged in a second superseding indictment in the Eastern District of Missouri for a convicted felon in possession of a firearm (18 U.S.C.§ 922(g)(1)), possession and intent to distribute fentanyl, a Schedule II controlled substance (21 U.S.C. § 841(a)(1)), possession of a firearm in furtherance of one or more drug trafficking crimes (18 U.S.C. § 924(c)(1)), and maintaining a drug-involved premises (21 U.S.C. § 856(a)(1)).

---

[2] A subsequent count of the U.S. currency revealed that $16,251 was seized in total from NEWLON's person and 7273 Morningaire.

46. On or about June 10, 2021, NEWLON pleaded guilty to count three of the second superseding indictment for possession of a firearm in furtherance of one or more drug trafficking crimes (18 U.S.C. § 924(c)(1)). As part of his plea agreement, NEWLON agreed to "forfeit to the United States all property subject to forfeiture under the applicable statutes, including but not limited to" Items #1 – 5,[3] waived his interest in these items, and agreed not to object to any administrative forfeiture brought against these items by the Federal Bureau of Investigation.

## Conclusion

47. Based on your affiant's training and experience and the training and experience of other veteran members of law enforcement, the information set forth above establishes probable cause that ANTWON NEWLON engaged in narcotics trafficking in violation of 21 U.S.C. §§ 841(a)(1) and 846; that NEWLON was a felon in possession of a firearm in violation of 18 U.S.C. § 922(g); that NEWLON possessed a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c); and that the above described property is subject to criminal forfeiture pursuant to 21 U.S.C.§ 853(a) and 18 U.S.C. § 924(d), and civil forfeiture pursuant to 21 U.S.C. § 881(a)(6) and (11).

**I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.**

ROBERT BRANNAN
Task Force Officer
Federal Bureau of Investigation

**Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 this ____ day of November, 2021**

HONORABLE SHIRLEY P. MENSAH
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

---

[3] In his plea agreement, NEWLON agreed to forfeit U.S. currency in the approximate amount of $16,233.

12